Gerald J. LINDENBERG, et al.,
Plaintiffs-Appellants,

v.

FIRST FEDERAL SAVINGS AND LOAN, et al.,
Defendants-Appellees.

No. 82–8213
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Nov. 12, 1982.

---

---

Hansell, Post, Brandon & Dorsey, James A. Gilbert, Trammell E. Vickery, Henry M. Hatcher, Jr., Mitchell, Clarke, Pate, Anderson & Wimberly, Thomas Hal Clarke, Jr., Atlanta, Ga., for defendants-appellees.

Before HILL, KRAVITCH and HENDERSON, Circuit Judge.

PER CURIAM:

This is as an appeal from the district court's grant of partial summary judgment, 528 F.Supp. 440, against plaintiff as to counts two, three, four and a portion of count five of plaintiff-appellant's complaint. Plaintiffs are challenging the lending practices of federally chartered savings and loans associations under both Georgia and federal law. Under Georgia law, the usury limitation in effect at the time a loan is made remains applicable throughout the life of the loan. Ga.Code Ann. § 57–106 (1977). Therefore, the usury rate could not be escalated at the time of assumption of the loan by a new party unless there was a new loan agreement or new contract. Under the federal law however, escalation of interest rates upon the assumption of a loan is permitted. 12 C.F.R. § 545.8–3(g)(3) (1982).

Appellants have raised three issues on appeal. First, whether under Georgia law it is the time of the making of the original loan or the time when the loan is assumed that controls the usury limit applicable to residential purchase loans. Second, appellants challenge the district court's finding that the Public Law 96–161, the Homeowners Act of 1933 and subsequent regulations issued by the Federal Home Loan Bank Board preempted the Georgia statutes which regulate the applicable state usury laws on loan assumptions involving residential loans. For the reasons stated below, we affirm the district court's orders.

## I. FACTS

Defendant First Federal Savings and Loan Association [hereinafter First Feder-

Lefkoff, Pike, Fox & Sims, Jerry L. Sims, Atlanta, Ga., for plaintiffs-appellants.

al] made a residential loan to Mr. and Mrs. Childers on March 30, 1977. The loan was supported by a note providing for an interest rate of 8.75% per annum. At that time under Georgia law the maximum allowed interest rate was 9% per annum. The Childers subsequently sold the property to Ms. Charlean Ernst who assumed the loan. Ms. Ernst, on December 31, 1979, sold the property to the appellant, Mr. Gerald Lindenberg. Thereafter, First Federal, Mr. Lindenberg, and Ms. Ernst entered into a loan modification and assumption agreement. The agreement released Ms. Ernst from all future liability on the loan and provided that Mr. Lindenberg would assume the loan at an escalated interest rate of 10.75% per annum.

In an analogous situation, defendant Fulton Federal Savings and Loan Association [hereinafter Fulton Federal] on March 9, 1979 made a home purchase loan to Mr. and Mrs. Smith. The loan was supported by a promissory note and secured by a deed to secure the debt on the residence. The interest rate was 9.75% per annum while the maximum lawful interest rate at that time under Georgia law was 10% per annum. The Smiths then sold the property to the appellants Mr. and Mrs. Green. Pursuant to the sale, the Greens, the Smiths and Fulton Federal entered into a loan modification and assumption agreement. The agreement released the Smiths from all future liability on the loan in return for the Greens assuming the loan at an increased interest rate of 12%.

In both modification agreements there existed a covenant providing that the agreement was an assumption and not a novation. The lenders acceptance of the assumption of the obligations, the release of the borrower and the substitution of new parties at escalated interest rates was authorized in both agreements by a "due on sale" provision. No new notes or security deeds were signed by either of the appellants.

## II. DISCUSSION

Plaintiff-appellants contend that because there are clauses in both of their contracts which provide that the loan modification agreements are *not* novations, and because no new notes were signed, no new contracts were formed. Therefore, the dates of the making of the original loans are controlling, rather than the dates of the assumption of those loans. Plaintiffs further contend that the loans would not be preempted by federal law because their creation would have been prior to the effective dates of the federal legislation, and therefore Georgia law would apply.

However, as was correctly stated by the district court, a new contract can be created, even under Georgia law, without being a novation. *See Williams v. Rowe Banking Co.*, 205 Ga. 770, 55 S.E.2d 123 (1949); *see also* Ga.Code Ann. § 20–115 (1977). Although both agreements state that they were not intended to be novations, it does not necessarily follow that they are not new contracts. The court is more concerned with what the agreement actually is, rather than what it is labeled. This court agrees with the district court that under Georgia law, the transactions in this case resulted in new contracts. Accordingly, the date of the loan assumptions are controlling rather than the original date of the notes.

The issue of what the applicable usury rates would be under Georgia law has been resolved by the Supreme Court decision, handed down after this appeal was taken, in *Fidelity Federal Savings and Loan Association v. De la Cuesta*, —— U.S. ——, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). The issue in *De la Cuesta* was the preemptive effect of a regulation issued by the Federal Home Loan Bank Board [hereinafter Board]. The Board, according to *De la Cuesta* has been vested with plenary authority to administer the Homeowners' Loan Act of 1933 [hereinafter HOLA], 48 Stat. 128 (codified as amended at 12 U.S.C. § 1461 *et seq.* (1976 and Supp. IV 1980)). —— U.S. at ——, 102 S.Ct. at 3017–18. The Board has been empowered under § 1464(a) of HOLA to regulate federal savings and loans associations. Based upon

this authority, the Board issued a regulation governing "due on sale" clauses which became effective July 31, 1976. 12 C.F.R. § 545.8–3(f) (1982). The provision provides:

> [A federal savings and loan] association continues to have the power to include ... a provision in its loan instrument whereby the association may ... declare immediately due and payable sums secured by the association's security instrument if all or any part of the real property securing the loan is sold or transferred by the borrower without the association's prior written consent. Except as [otherwise] provided ..., exercise by the association shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the association and borrower shall be fixed and governed by that contract.

*Id.*

The Supreme Court in *De la Cuesta* stated that, "[a]ny ambiguity in § 545.8–3(f)'s language is dispelled by the preamble accompanying and explaining the regulation. The preamble unequivocally expresses the Board's determination to displace state law ...." —— U.S. at ——, 102 S.Ct. at 3024. The preamble accompanying the regulation states: "Finally, it was and is the Board's intent to have ... due-on-sale practices of Federal associations governed exclusively by Federal law.... Federal associations shall not be bound by or subject to any conflicting state law which imposes different ... due-on-sale requirements ...." 41 Fed.Reg. 18286, 18287 (1976). *See Fidelity Federal Savings & Loan Association v. De la Cuesta,* —— U.S. ——, ——, 102 S.Ct. 3014, 3025, 73 L.Ed.2d 664 (1982).

Based upon the Supreme Court's opinion in *De la Cuesta* and the regulations set forth by the Board, it is clear that federal law was intended to preempt conflicting state law in this area. Additionally, the Board has cleared up any ambiguity with respect to whether a loan assumption constitutes a new loan by issuing the following regulation:

> With respect to any loan made after July 31, 1976, on the security of a home occupied or to be occupied by the borrower, a Federal association: (3) waives its option to exercise a due-on-sale clause as to a specific transfer it, before the transfer, the association and the person to whom the property is to be sold or transferred (the existing borrower's successor in interest) agree in writing that the person's credit is satisfactory to the association and that interest on sums secured by the association's security interest will be payable at a rate the association shall request. Upon such agreement and resultant waiver the association shall release the existing borrower from all obligations under the loan instruments, and the association is deemed to have made a new loan to the existing borrower's successor in interest.

12 C.F.R. § 545.8–3(g)(3) (1982).

Because the assumptions by plaintiffs were new loans and because federal law permits the escalation of interest rates upon the assumption of a residential purchase loan when there is an appropriate provision in the contract, we

AFFIRM.